IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY DAWAYNE LEE TURNER,<br><br>Plaintiff(s),<br><br>vs.<br><br>TOM GRAFF, et al.,<br><br>Defendant(s). | No. C 10-5709 CRB (PR)<br><br>ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND REFERRING MATTER TO MAGISTRATE JUDGE FOR SETTLEMENT<br><br>(Docket # 44, 46, 59 & 79) |

Plaintiff Anthony Dawayne Lee Turner, a civilly committed patient at Napa State Hospital (NSH), filed a pro se complaint under 42 U.S.C. § 1983 alleging that on December 24, 2008, Dr. David Brody, acting program director Tom Graff and hospital police officer Bernard Lee used excessive force when they kicked, punched and kneed him while he was face down on the floor.

Per order filed on August 24, 2011, the court found that plaintiff's allegations, liberally construed, stated a cognizable § 1983 claim for damages for excessive use of force against Brody, Graff and Lee, and ordered the United States Marshal to serve them.[1] The court dismissed plaintiff's request for injunctive relief as moot and made clear that the action would be limited to his § 1983 claim for damages for excessive use of force.

---

[1] Plaintiff also named several Doe defendants in connection with his claim of excessive use of force, but the court dismissed them after plaintiff failed to identify them and amend his complaint to add them.

Defendants Brody, Graff and Lee move for summary judgment on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. They also claim that they are entitled to qualified immunity. Plaintiff has filed oppositions and defendants have filed replies. Plaintiff has also filed supplementary evidence after the court re-issued a Rand notice in light of Woods v. Carey, Nos. 09-15548 & 09-16113, slip op. 7871 (9th Cir. July 6, 2012).[2]

## DISCUSSION

A. Standard of Review

    1. Summary judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which

---

[2]In Woods, the Ninth Circuit held that a Rand notice must be served concurrently with a motion for summary judgment so that pro se prisoners will have fair, timely and adequate notice of what is required of them in order to oppose the motion. Woods, slip op. at 7874.

2

the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

    2.    Qualified immunity

Under Saucier v. Katz, 533 U.S. 194 (2001), the court must undertake a two-step analysis when a defendant asserts qualified immunity in a motion for summary judgment. The court first faces "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" 533 U.S. at 201. If the court determines that the conduct did not violate a constitutional right, the inquiry is over and the officer is entitled to qualified immunity.

If the court determines that the conduct did violate a constitutional right, it then moves to the second step and asks "whether the right was clearly established" such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02. Even if the violated right was clearly established, qualified immunity shields an officer from suit when he makes a decision that, even if constitutionally deficient, reasonably

misapprehends the law governing the circumstances he confronted. Brosseau v. Haugen, 543 U.S. 194, 198 (2004); Saucier, 533 U.S. at 205-06. If "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." Id. at 205.[3]

B.   Claim and Analysis

While excessive force claims by prisoners are reviewed under the Eighth Amendment's malicious and sadistic standard, the more generous Fourteenth Amendment's objective reasonableness standard applies to those who are civilly confined. Hydrick v. Hunter, 500 F.3d 978, 997-98 (9th Cir. 2007), rev'd on other grounds, 129 S. Ct. 2431 (2009). Under the objective reasonableness standard, courts must balance several factors focusing on the reasonableness of the officer's actions given the circumstances. White v. Roper, 901 F.2d 1501, 1507 (9th Cir. 1990). These factors include (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. Id. In order to prevail on an excessive force claim, a civilly confined plaintiff must show the use of force was excessive because it was not reasonably necessary to maintain or restore order and/or discipline. See Hydrick, 500 F.3d at 997-98; Andrews v. Neer, 253 F.3d 1052, 1061 & n.7 (8th Cir. 2001).[4]

---

[3]Although the Saucier sequence is often appropriate and beneficial, it is not mandatory. A court may exercise its discretion in deciding which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

[4]Eighth Amendment cases provide helpful guidance as to the standards to be applied to excessive force claims by civilly confined plaintiffs because the Eighth Amendment provides a floor for the level of protection that such plaintiffs must receive under the Fourteenth Amendment. See Hydrick, 500 F.3d at 998.

4

Defendants argue that they are entitled to summary judgment on plaintiff's excessive force claim because plaintiff has not set forth sufficient evidence showing that there is a genuine dispute of material fact for trial. Defendants specifically argue that plaintiff has not set forth admissible evidence showing that the force used was not reasonably necessary to maintain or restore order and/or discipline. In support, they submit declarations and documentary evidence showing the following:

Plaintiff is a patient at NSH with a court ordered commitment beginning February 18, 1999. His diagnosed disorders include polysubstance dependence and antisocial personality disorder.

On November 18, 2008, plaintiff began to complain in an agitated fashion about being held at NSH beyond his release date.

On December 18, 2008, plaintiff was caught trying to escape. He was placed under continuous observation as a result.

On December 23, 2008, plaintiff became agitated when he was told he had an upcoming court date in January 2009. Plaintiff picked up a chair and threw it against the wall. When he was told later that the court date was March 2009, he ripped the telephone off the wall, smashed it onto the floor and walked threateningly towards staff. He refused his medications and remained agitated throughout the day, banging on doors and windows with considerable force, ripping another patient's book to shreds and knocking over the Christmas tree.

On December 24, 2008, plaintiff became agitated again, yelling "get me a motherfucking social worker" and pounding windows and walls. He broke two more chairs, slammed a tray on the ground and picked up a piece of the chair and threatened to hurt staff with it. He was yelling, making a fist and shaking a piece of the chair leg at the staff. At this point, Dr. Brody authorized staff to

administer sedating medication intramuscularly to plaintiff because, in his medical opinion, plaintiff was imminently dangerous to himself and others.

Staff asked plaintiff to go to the seclusion room to be given his medication. But plaintiff refused, saying he would fight if given medication. When two hospital police officers attempted to escort plaintiff to the seclusion room, he resisted and attempted to "bull" his way through the assembled staff.

A call for assistance went out and several more hospital police officers and staff responded, including Graff and Lee. The officers attempted to gain control of plaintiff, but he began to fight. Plaintiff bit Lee's hand and finger, and grabbed another officer's hand and would not let go. When Lee pulled his hand out of plaintiff's mouth, two of his denture teeth fell on the floor and he spit his dentures on the ground. Plaintiff continued to struggle as the officers managed to push him onto the floor and restrain him. Graff assisted the officers by holding plaintiff's foot to the ground after the take down.

Staff gave plaintiff sedating medication intramuscularly while he was on the ground. He was then placed on a Gurney and transported to the seclusion room and placed in five point restraints. Plaintiff was released from the restraints after an hour when he no longer showed evidence of being imminently dangerous.

After the incident, plaintiff was treated for a swollen right hand from his pounding on windows and walls, and for cracked dentures. X-rays showed no acute fracture or dislocation; only soft tissue swelling was noted.

Under defendants' version of the facts, no reasonable jury could find that the force used was not reasonably necessary to maintain or restore order and/or discipline. Plaintiff refused to be medicated voluntarily after Dr. Brody

determined that he presented an imminent danger to himself and others,[5] threatened to fight if staff tried to medicate him involuntarily and resisted when officers tried to escort him to the seclusion room. Even if plaintiff's resistance did not pose a physical threat to the officers, it created a need for them to apply reasonable force to control plaintiff in order to maintain discipline and order. See White, 901 F.2d at 1507. Under the circumstances, taking down plaintiff to the ground so he could be medically sedated and placed in the seclusion room until he was not imminently dangerous was not excessive or brutal so as to offend due process. See id. After all, the only documented injury plaintiff suffered from the application of force was the loss of two denture teeth from his biting Officer Lee.

Plaintiff's version of the facts is different. Although he does not dispute that he resisted orders to go to the seclusion room to be medically sedated, he claims that defendants unreasonably used excessive force when they kicked, punched and kneed him while he was face down on the floor. In support, he submits several declarations under penalty of perjury in which he states,

> Dr. David Brody (medical doctor), Mr. Tom Graff (acting program director), Mr. Bearer [sic] Lee (hospital correctional officer) [and others] proceeded to do a take down and assaulted plaintiff with the use of excessive force while face down on the floor.

Docket # 88-1 at 56.

---

[5]Due process allows a civilly committed person to be treated involuntarily with antipsychotic drugs where there is a determination that the person "is dangerous to himself or others and the treatment is in the [person's] medical interest." Riggins v. Nevada, 504 U.S. 127, 134-35 (1992) (citation omitted). Dr. Brody's determination that plaintiff should be medically sedated because he presented an imminent danger to himself and others is amply supported by the evidence in the record. See also Sharp v. Weston, 233 F.3d 1166, 1171 (9th Cir. 2000) (treatment decision made by mental health professional is presumptively valid and should be accorded deference). Plaintiff's mere disagreement with Dr. Brody's determination is not enough to create a genuine issue for trial.

7

> [Specifically,] Tom Graff, Dr. David Brody, Bernard Lee, and others used excessive force with kicks and punches while plaintiff was on the ground [face down] . . . .

Id. at 58.

> Then Mr. Bearer [sic] Lee (hospital correctional officer) drove his knee so hard to the back of plaintiff's head that two teeth shattered from plaintiff dentures and the dentures flew 10 feet out of plaintiff's mouth. Plaintiff also was left with an abrasion on the right side of his forehead . . . .

Id. at 56. See also Docket # 88-1 at 21 ("I was kneed in the back of my head by Officer Lee, and my dentures were cracked and split, and two teeth broken, and left a swollen knot on the right side of my forehead").[6]

      Viewing the evidence in the light most favorable to plaintiff, as we must, a reasonable jury could find that defendants used unreasonably excessive force against plaintiff. Although plaintiff's resistance created a need for defendants to apply reasonable force to control him in order to maintain discipline and order, kicking, punching and kneeing plaintiff after he was taken down and was face down on the ground supports the finding that the force used by defendants was unreasonably excessive or brutal, even if plaintiff did not suffer significant injuries. See Hudson v. McMillian, 503 U.S. 1, 9-10 (1992) (use of force that is more than de minimus and/or use of force of a sort repugnant to the conscience of mankind may violate 8th Amendment even if plaintiff did not suffer significant injuries); see also Hydrick, 500 F.3d at 998 (if SVPs allege conduct that sinks below protections afforded prisoners under 8th Amendment, their claim certainly states a violation of the their due process rights under the 14th Amendment).

---

[6] Plaintiff also submits a declaration from Michael Morrow in which Mr. Morrow states, arguably under penalty of perjury, that he "saw Bernard Lee hit [plaintiff] in the back of the head while [plaintiff] was face down on the ground. I also seen Dr. David Brody and Mr. Tom Graff kick and punch [plaintiff]." Docket # 94-1 at 43.

8

Nor are defendants entitled to qualified immunity on plaintiff's excessive force claim at this stage in the proceedings. Viewing the facts in the light most favorable to plaintiff, it cannot be said that a reasonable officer in defendants' position would have believed that kicking, punching and kneeing plaintiff after he was taken down and was face down on the ground was reasonably necessary to maintain discipline and order, and thus lawful. Cf. Marquez v. Gutierrez, 322 F.3d 689, 692-93 (9th Cir. 2003) (granting qualified immunity where reasonable officer could believe that shooting one inmate in the leg to stop an assault that could have seriously injured or killed another inmate was a good faith effort to restore order, and thus lawful).

While resolution of the factual issues may well relieve defendants of any liability in this case, if plaintiff's version of the facts were to prevail at trial, a reasonable jury may conclude that defendants used unreasonably excessive force in violation of plaintiff's due process rights. Summary judgment is not appropriate as to plaintiff's excessive force claim against defendants because there are genuine disputes of material fact for trial and qualified immunity is not in order as a matter of law.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment (docket # 44, 46, 59 & 79) are DENIED.

The court finds that a referral to a magistrate judge for settlement proceedings is in order and hereby REFERS this case to Magistrate Judge Vadas for settlement proceedings. All other proceedings are stayed.

A settlement conference shall take place within 120 days of the date of this order, or as soon thereafter as is convenient to the magistrate judge's calendar. Magistrate Judge Vadas shall coordinate a time and date for the

conference with all interested parties and/or their representatives and, within ten (10) days after the conclusion of the conference, shall file with the court a report regarding the conference.

The clerk shall provide a copy of this order to Magistrate Judge Vadas.

SO ORDERED.

DATED: 8/17/2012

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\CR.10\Turner, A1.10-5709.msj.wpd